LEW HSIANG, Lew Yim and Lew Ann, Plaintiffs-Appellants,

v.

Herbert BROWNELL, as Attorney General, Defendant-Appellee.

No. 11594.

United States Court of Appeals Seventh Circuit.

June 19, 1956.

Ben C. Brostoff, J. Norman Goddess, Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., Richard Mayer, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

One day before the Immigration and Nationality Act of 1952, 66 Stat. 163, 181, became effective, Lew Hsiang, Lew Yim, and Lew Ann, plaintiffs, filed their joint petition below, seeking a declaratory judgment of their respective alleged citizenships under § 503 of the Nationality Act of 1940. 54 Stat. 1171, 8 U.S.C. § 903.* After a series of pleading amendments by both sides this action was dismissed for want of jurisdiction under an order, now here on review, holding that "Section 1503 of Title 8, United States Code, enacted December 24, 1952, prohibits review of such decision, except by *habeas corpus* * * *"

Because plaintiffs' citizenship became an issue generated by these exclusion proceedings, the district judge concluded their exclusive remedy was through the writ. We agree.

For our purposes the material facts must be extracted from the pleadings, exhibits, and decision of the Board of Immigration Appeals.

From the travel affidavits issued each plaintiff, by the United States Vice Consul in Hong Kong, it appears that Ann, Hsiang, and Yim were born in China and claimed American citizenship, derivatively by virtue of birth abroad of a United States citizen father, Lew Park. Each Plaintiff on April 4, 1952 executed his respective Travel Affidavit under oath, containing, among other recitations, this paragraph:

"I execute this affidavit to serve as a travel document in order to facilitate my/our journey to America, with the understanding that my/our eligibility to enter the United States will be determined by the Immigration and Naturalization Service upon my/our arrival at a port of entry."

Plaintiffs arrived at that port, San Francisco, California on July 8, 1952 and applied for entry as United States citizens. All three were excluded after a hearing by a Board of Special Inquiry which found, in substance that plaintiffs failed to establish their respective identities as the persons each one claimed to

* Now Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503.

be. In its review of that ruling, in the exclusion proceedings the Board of Immigration Appeals dismissed the trio of appeals in a detailed decision dated April 19, 1955. At a late stage, while the declaratory judgment proceeding was pending in the trial court, plaintiff's counsel informed the district judge that the Board of Special Inquiry had, on about November 30, 1954, recommended that the three plaintiffs be denied admission to the United States. When counsel then informed the judge that plaintiffs were pursuing their administrative remedies, it was then indicated by the court that the matter should be again continued and the government permitted to plead the defense of exclusive remedy by *habeas corpus*. Earlier in September, 1954, plaintiffs, through their attorney represented to the court that blood tests, taken in July at the request of the Service, showed compatibility. Speaking of the decision then under review, before it, the Board epitomized this matter as follows:

> "The instant hearing was continued over a period of two years and there was ample opportunity for obtaining affidavits or depositions from affiants through channels, or to obtain other evidence to refute the evidence presented by the government, if the appellants' claims to citizenship were bona fide. No controverting evidence has been produced. Consequently the appellants' claims to United States citizenship must be rejected."

As we read § 503 in the Nationality Act of 1940, 8 U.S.C. § 903, vitality for actions flowing from that provision springs from denials of claimants' rights or privileges as Nationals of the United States. But it was with the 1955 decision that plaintiffs' asserted rights as alleged United States Nationals were ultimately denied. They had expressly agreed eligibility determinations would await them at the port of San Francisco. Instead of denials, as in the passport cases relied upon by plaintiffs in their brief, they received Travel Affidavits. Once here, however, the contemplated administrative process commenced operation. Without the requisite statutory denial in hand when plaintiffs filed their petition, for declaratory judgment, that jurisdictional defect tainted the proceeding. Nor can plaintiffs erect such a constructive denial out of their detention on arrival, or from a statement of an agent of defendant as would repair that defect. All that went on before the final administrative decision was prologue, not denial. With paternity and identity squarely challenged within the administrative framework these plaintiffs remained mute. Without a jurisdictional anchor in 1952, their complaint is unavailing as a remedy, then or now. In the view we take of this appeal, an elaborate discussion of the various statutory provisions and points raised by plaintiffs is unnecessary.

Judgment affirmed.